UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDY ALEXANDER, INC., ) | |
| ) | No. 19 CV 2461 |
| Plaintiff, ) | |
| ) | |
| v. ) | Magistrate Judge Young B. Kim |
| ) | |
| MANROLAND INC., ) | |
| ) | August 3, 2020 |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiff Sandy Alexander, Inc. brings this action against Defendant Manroland Inc. based on issues with a Roland 700 Evolution printing press ("the Press"). In prior orders the court granted Defendant's motion for the appointment of a special master, (R. 51), and appointed Mr. Raymond Prince as the special master to assist the court with disputes relating to the Press, (R. 62). Mr. Prince passed away on May 1, 2020, after he submitted a preliminary report but before he finalized the same. Before the court is Plaintiff's motion to enter the preliminary report on the docket. For the following reasons, Plaintiff's motion is granted, and the parties may object to, adopt, or modify the report as set forth below:

**Background**

Plaintiff alleges that the Press, which it purchased from Defendant in 2017, did not conform to specifications set forth in the parties' contract and that Defendant refused to replace the Press or issue a refund. On November 25, 2019, Defendant moved the court to appoint a special master in accordance with Federal

Rule of Civil Procedure 53. (R. 50, Def.'s Mot.) In granting that motion and selecting Mr. Prince, the court noted that both Plaintiff and Defendant recommended him as someone with the necessary qualifications to serve as a special master in this case. (R. 51; R. 62; see also R. 56, Def.'s Statement; R. 57, Pl.'s Statement.) As the special master, Mr. Prince was required to review the parties' written submissions, request additional information as needed, conduct interviews (on the record and under oath), and inspect and test the Press. (R. 62.) The parties memorialized the terms of Mr. Prince's engagement in a Letter Agreement. (R. 84, Def.'s Obj. at 6; R. 84-1, Letter Agreement.)

As part of his inquiry, Mr. Prince conducted 17 witness interviews and completed a week-long print test of the Press. (R. 83, Pl.'s Mot. at 3; R. 88, Jt. Status Rep. at 2.) He provided his data and findings to the parties and then submitted a 42-page preliminary report, including exhibits, to the court and parties on April 26, 2020. (R. 84-3, April 26, 2020 Email from R. Prince; R. 88, Jt. Status Rep. at 2.) His final report was due to be filed on May 15, 2020, following a period during which the parties could submit comments to him. (R. 62.) However, he passed away before finalizing the report based on the parties' comments.

Addressing 16 questions enumerated by the court, (id.), Mr. Prince determined in his preliminary report that the Press: (1) was "operating at a very low uptime" and "not reliable," akin to the level of needing to take a vehicle into the dealership "every week" for repairs, (R. 83-3, Prelim. Rep. at 6, 11-13); (2) required "reboot[ing] far too many times," "major adjustment," and parts replacements, (id.

at 8); and (3) suffered an "exceedingly high" number of malfunctions, (id. at 14). He found that Defendant acted in bad faith on a number of occasions, including by "withholding information," (id. at 16), possibly "hiding" information, (id.), failing to deliver a specified product and implement corrective measures on the Press, (id. at 17), and possibly trying to intimidate him, (id. at 18). By contrast, while Mr. Prince found that Plaintiff could have better maintained the Press's rollers in the prior six-month period, he determined that Plaintiff did not act in bad faith. (Id. at 18-19.)

Mr. Prince concluded that the Press "has and had manufacturing problems that are still evident," and that Defendant breached its contract with Plaintiff in January 2019 when it refused to replace the Press. (Id. at 21, 29.) Mr. Prince opined that Plaintiff should receive a refund given that other presses made by Defendant allegedly have "serious reliability issues." (Id. at 14, 29 ("The worst solution in my opinion would be for [Defendant] to replace the [P]ress with a new one and have the same issues.").) Following a full inspection and repair of the Press, the Press should be resold as a "used press," according to Mr. Prince. (Id. at 20-21, 29.) Mr. Prince found that any value derived by Plaintiff "is very questionable" because of the issues it experienced with the Press. (Id. at 21.) Operational downtime caused by those issues was "excessive" compared with other presses. (Id. at 22.) The cost of repairs to the Press as of October 2019 was greater than $2 million, which Mr. Prince deemed "exceedingly high" given that the Press itself cost $3.663 million. (Id. at 15.)

When submitting his preliminary report, Mr. Prince indicated that he "still ha[d] 20% more to write, mainly data." (R. 84-3, April 26, 2020 Email from R. Prince; R. 88, Jt. Status Rep. at 2.) Plaintiff now moves to enter the preliminary report on the docket. (R. 83, Pl.'s Mot.) Defendant opposes Plaintiff's motion, deeming Mr. Prince's efforts nullified by his inability to finalize and file his report, (R. 84, Def.'s Obj.), and asks the court to appoint a new special master. (Id.)

## Analysis

Plaintiff argues that Mr. Prince's preliminary report should be entered on the docket, and that the parties should be permitted to object to, adopt, or modify that report. (R. 83, Pl.'s Mot.) Federal Rule of Civil Procedure 53 governs the appointment of special masters as well as the adoption, modification, or rejection of orders, reports, and recommendations a special master submits. Rule 53 requires a special master to file his report and promptly serve it on each party. Consistent with Rule 53, the special master protocol established by this court required Mr. Prince to submit his final report for uploading onto the court's docket. (R. 62.) After conducting his investigation Mr. Prince emailed the preliminary report to the court and the parties. (R. 83, Pl.'s Mot. at 9.) He died before completing or filing a final report. Plaintiff contends that because a final report cannot be submitted, the preliminary report should instead be filed. The court agrees.

Defendant asks the court to scrap Mr. Prince's work and appoint a new special master. (R. 84, Def.'s Obj. at 10-14.) Much time, effort, and expense went into Mr. Prince's inquiry and the preparation of his report. After many weeks of

conducting interviews and testing the Press, Mr. Prince prepared and submitted a preliminary report that was 80% complete, with "mainly data" to be added. (R. 84-3, April 26, 2020 Email from R. Prince; R. 88, Jt. Status Rep. at 2.) Plaintiff represents that the parties spent $100,000 in special master costs and more than $300,000 in total costs, including legal fees, in connection with the inquiry Mr. Prince conducted. (R. 83, Pl.'s Mot. at 2, 10.) Given the significant sums expended in the special master process, the court prefers to build upon the work already done, rather than start anew.

The court notes that it was Defendant who proposed using a special master in this case. (R. 50, Def.'s Mot.) Defendant argued that "due to the multiple complex issues requiring adjudication—a special master would be an ideal method to resolve the dispute between the parties in a cost-effective and equitable way." (Id. at 2 ("A special master experienced in the business of printing would best be able to determine whether the Evo Press is in fact perpetually defective and to calculate any damages Plaintiff may have sustained as a result of the malfunctions in the Evo Press.").) Based on Defendant's representations, the court granted its motion to appoint a special master and selected Mr. Prince after both parties recommended him as having the necessary qualifications. (R. 56, Def.'s Statement; R. 57, Pl.'s Statement.) Mr. Prince conducted a thorough inquiry and submitted a preliminary report with citations to exhibits containing evidence supporting his findings. (See R. 83-3, Prelim. Rep.) Defendant generally fell on the losing side of those

5

conclusions. Now that Mr. Prince's work is largely done, the court declines to grant a total redo.

Defendant argues that precedent mandates the appointment of a new special master to restart the inquiry back at step one. (R. 84, Def.'s Obj. at 3-5, 10-14.) Citing *Smith v. Dental Products Co.*, 168 F.2d 516, 518 (7th Cir. 1948), Defendant asserts that where a special master dies before issuing a report, the referral must be rendered a "nullity." (R. 84, Def.'s Obj. at 8.) In *Smith* the special master died before issuing any report, draft or otherwise. 168 F.2d at 518. While the special master had conducted several hearings, the evidence was controverted, and he had indicated that additional evidence might be required. *Id.* Under those circumstances, the Seventh Circuit determined that to safeguard the parties' due process rights, the court could not venture a guess as to the master's factual findings or credibility determinations. *Id.* at 518-19. Instead, "in the absence of findings and report from the [m]aster," the district court had a duty to conduct a *de novo* hearing, in front of a new special master or the court itself. *Id.* at 519.

The court disagrees that the *Smith* decision lays out a blanket rule that nullifies the work performed by Mr. Prince in this case. Unlike the special master in *Smith*, Mr. Prince issued a report, albeit in preliminary form. (R. 83-3, Prelim. Rep.) That report left no one guessing as to his findings or conclusions. The missing information is Mr. Prince's reaction to the parties' comments in his final report. Thus, there is no need to cast aside Mr. Prince's thorough work. To safeguard the parties' due process rights and ensure that they have an opportunity

6

to be heard on substantive matters set forth in the preliminary report, *see Smith*, 168 F.2d at 518-19; Fed. R. Civ. P. 53(f)(1), the parties may retain experts, if they wish, to support their objections to Mr. Prince's conclusions.

Defendant next asserts that the Federal Rules of Civil Procedure preclude any reliance on Mr. Prince's preliminary report. (R. 84, Def.'s Obj. at 3-5, 14-25.) Defendant argues that Mr. Prince should be disqualified for not complying with Rule 53(b)(3)(A)'s requirement that a special master must file an affidavit disclosing whether he has any conflicts of interest. (Id. at 4, 14-15.) Here Mr. Prince did not file such an affidavit. (Id. at 14.) Yet it was Defendant that nominated him, (R. 56, Def.'s Statement), and after Plaintiff consented, Mr. Prince notified the parties that he had previously worked with both companies, (R. 57, Pl.'s Statement). At that time, Defendant raised the issue of Plaintiff having a previously undisclosed relationship with Plaintiff, which Plaintiff says it addressed. (R. 87, Pl.'s Reply at 5.) Regardless, the parties consented to Mr. Prince's engagement as special master and entered into a Letter Agreement with him to retain his services. (Id.) Defendant never raised a Rule 53(b)(3) objection during that process. Instead, Defendant waited to object until after Mr. Prince completed his extensive inquiry and issued a 42-page report, which largely finds in Plaintiff's favor. (R. 83-3, Prelim. Rep.) Even now, Defendant does not identify any qualifying conflicts. (R. 87, Pl.'s Reply at 5.)

The court finds that Defendant waited too long to lodge a Rule 53(b)(3) objection. Other courts have recognized "the potential for parties to use

7

disqualification motions as an abusive litigation tactic" in cases involving special masters. *U.S. v. Carter*, No. 16-20032, 2020 WL 329573, at *23 (D. Kan. Jan. 25, 2019) (collecting cases). Rule 53(b)(3) is not "an insurance policy to be cashed in if a party's assessment of his litigation risks turns out to be off and a loss occurs." *Id.* ("To minimize the potential for abuse . . . a movant waives its chance to challenge a special master if it fails to raise the issue at the first available opportunity." (internal citations omitted)). To be sure, "[t]he recusal provision [in Rule 53(b)(3)] was intended to be a shield, not a sword.'" *Id.* Accordingly, the court declines to allow Defendant to use Rule 53(b)(3) as a sword given the untimely nature of its request to disqualify Mr. Prince.

Defendant also seeks to have Mr. Prince and his report deemed unreliable. (R. 84, Def.'s Obj. at 5, 8-9, 16-23.) Rule 53(f)(2) allows a party to object to a special master's report or recommendations up to 21 days after service. Even though Mr. Prince's report was not final, Defendant timely objected to the preliminary report. In its objection, Defendant points to portions of the report that purportedly contain "factually inaccurate" statements, "incomplete and/or inconsistent findings," and "notable omissions and inherent contradictions." (R. 84, Def.'s Obj. at 5, 8-9.) The court declines to rule on Defendant's substantive objections to Mr. Prince's preliminary report at this time as they are not relevant as to the entry of the report on the docket. Instead, such objections are reserved for the court's *de novo* review after the report is filed.

Defendant also objects to Mr. Prince's competence to serve as special master. (R. 84, Def.'s Obj. at 9.) In a supplemental objection, Defendant accuses Mr. Prince of having suffered from a mental impairment and using unauthorized assistance to prepare his report. (R. 98, Def.'s Supp. at 1-3.) For support Defendant quotes a conversation with Mr. Prince's wife, in which she apparently stated that her husband said a lot of "gobbledygook" in his final days. (Id. at 1.) She also allegedly suggested that another person or persons had been assisting Mr. Prince with his report. (Id.) Defendant represents that it undertook a forensic examination of the preliminary report submitted by Mr. Prince and determined that "Sony" was the author. (Id. at 2.) Defendant claims that it is unclear whether Mr. Prince authored and/or agreed with all statements in his report. (Id. at 3.) Given allegedly "clear evidence of [Mr. Prince's] mental impairment and the participation of other people in the [preliminary report]," Defendant seeks leave to: (1) depose Mr. Prince's widow regarding her observation of her husband's mental competence during the period in which he prepared his report; (2) examine Mr. Prince's hospital records to determine his competence; and (3) forensically examine all of Mr. Prince's electronic devices to determine who helped him prepare his report. (Id. at 4.)

In a supplemental reply, Plaintiff disputes "inferences and assumptions" made by Defendant following the parties' "ten-minute telephone conversation" with Mrs. Prince regarding the preservation of her late husband's records. (R. 99, Pl.'s Supp. Reply at 1-2.) Plaintiff argues that because Mr. Prince's preliminary report is subject to *de novo* review by the court, there is no need to "pry into his medical

9

records" or depose his widow, which "likely [would] cause her severe anguish for no legitimate reason." (Id.) In any event, Plaintiff notes that Defendant knew of Mr. Prince's hospitalizations in the months preceding his death and never questioned him about his mental competence while he was alive. (Id.) Defendant also knew about the metadata in the report showing "Sony" as the author of Mr. Prince's report before submitting its objection but did not raise that argument, according to Plaintiff. (Id. at 3.) Plaintiff claims that it understood Mrs. Prince to refer to assistance from a print laboratory, which Mr. Prince "repeatedly told the [p]arties" was helping him analyze raw data from the print test. (Id.) Plaintiff objects to discovery into Mr. Prince's mental capacity, medical records, or electronic devices. (Id.)

The court appreciates Defendant's concern about ensuring that factual findings and legal conclusions rendered in this case are complete and reliable. But there simply is no evidence that Mr. Prince lacked competence when he prepared his report, and Defendant never questioned him about such issues during his investigation. Because the court is allowing the parties to object to, adopt, or modify Mr. Prince's report, the parties and/or their experts may challenge any findings or conclusions with which they disagree, and the court will undertake a *de novo* review of such findings and conclusions. The court thus denies Defendant's request to disqualify Mr. Prince as special master.

Likewise, the court denies Defendant's request to obtain discovery related to Mr. Prince's health or his electronic devices. Where, as here, the preliminary report

10

on its face does not suggest incompetence, there is no reason to explore his medical history. Moreover, the proposed limited discovery would only increase the cost of litigation, invade the Prince family's privacy, and cause Mr. Prince's widow unnecessary anguish. As to Mr. Prince's electronic devices, metadata showing "Sony" as the author does not point to a need for additional discovery. Plaintiff points out that Sony is a "major electronics brand," (R. 99, Pl.'s Supp. Reply at 3), and there is no evidence that an individual with the name or nickname "Sony" helped author the preliminary report. Accordingly, Defendant's request for such discovery is denied.

## Conclusion

For the foregoing reasons, Plaintiff's motion to enter Mr. Prince's preliminary report on the docket is granted, and the parties may object to, adopt, or modify Mr. Prince's report as set forth herein.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**

11